RALPH G. GARCIA and KAREN J. GARCIA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garcia v. Commissioner
Docket No. 30574-83.
United States Tax Court
T.C. Memo 1985-577; 1985 Tax Ct. Memo LEXIS 55; 50 T.C.M. (CCH) 1480; T.C.M. (RIA) 85577; November 26, 1985. *55 During 1980, G, an electrician, was employed by the Bechtel Corporation to work on the construction of the Palo Verde Nuclear Power Plant near Buckeye, Arizona. G commuted daily from his residence in Tempe, Arizona, to his jobsite. Held, G's employment was indefinite rather than temporary, and, therefore, he is not entitled to deduct transportation expenses incurred commuting between his residence in Tempe and his jobsite. RuthAnne Tarletz, for the petitioners. Anne W. Durning, for *56 the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency of $1,057 in petitioners' 1980 Federal income tax. After concessions, the sole issue for decision is whether petitioners are entitled to deduct transportation expenses incurred by petitioner Ralph G. Garcia commuting between his residence and his jobsite each working day. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Ralph G. Garcia (Ralph) and Karen J. Garcia, husband and wife, resided in Tempe, Arizona, when they filed the petition in this case. Ralph, an electrician by trade and a member of the International Brotherhood of Electrical Workers, Local 127 in Kenosha, Wisconsin, was hired on February 5, 1979, by the Bechtel Power Corporation (Bechtel) to work on the construction of the Palo Verde Nuclear Power Plant (Palo Verde project) near Buckeye, Arizona. Ralph received his employment through Union Local 640 in Phoenix, Arizona. He had previously contacted Union Local 640 in January, 1979, as a result of a work shortage *57 near his home in Wisconsin. Ralph and his family moved from Kenosha, Wisconsin, to Arizona in February, 1979. In May, 1979, he purchased a home in Tempe, Arizona, which he and his family containued to occupy as of the date of trial. During 1980, Ralph usually commuted approximately 150 miles roundtrip each day by automobile between his home in Tempe and his jobsite. Bechtel paid Ralph a per diem allowance of $11 for travel and subsistence. Construction of the Palo Verde project commenced in June, 1976. The project consists of three separate nuclear generating plants. At the time Ralph was hired, all three units were under construction. As of August 31, 1980, the project was approximately 50 percent complete. Completion of the Palo Verde project is not expected until sometime in 1986. Ralph was employed by Bechtel from February 5, 1979, through July 9, 1980, when he voluntarily quit his job to support a strike by the local union. He was employed temporarily by two California companies from July 15, 1980, to July 29, 1980, and from August 12, 1980, to August 29, 1980, respectively. Ralph was rehired by Bechtel on September 5, 1980, and was continuously employed through July 27, 1981, when *58 he was terminated for violating certain work rules. He was again rehired by Bechtel on November 24, 1981, and was continuously employed through February 28, 1982, when he was terminated as a result of irregular attendance. Ralph was reinstated through a grievance procedure on March 9, 1982, but he quit his job nine days later for health reasons. Ralph was again rehired by Bechtel on January 28, 1983, but was subsequently terminated on January 11, 1984, in connection with a reduction of the work force. The peak demand for electricians at the Palo Verde project occurred in May, 1981. On their 1980 income tax return, petitioners claimed an employee business expense deduction of $5,933 for travel expenses incurred in connection with the Palo Verde project and Ralph's employment in California, which they characterized as "temporary". In the notice of deficiency, respondent disallowed $4,458 of the claimed expenses. [1]
*59 OPINION Under section 262, [2] the cost of daily commuting is generally held to be a personal expense and therefore non-deductible. . Section 162(a)(2) provides, however, that a taxpayer may deduct traveling expenses which are (1) ordinary and necessary; (2) incurred "while away from home"; and (3) incurred in the pursuit of a trade or business. See discussion in Generally, a taxpayer's "home" for purposes of section 162(a)(2) is the city or location of his principal place of business. ; . However, a taxpayer's personal residence is his "tax home" if the place of business is temporary rather than indefinite. , revg. , affd. *60 per curiam . In , affg. a Memorandum Opinion of this Court, the Ninth Circuit, to which an appeal from this case would lie, adopted the distinction between indefinite and temporary employment set forth in . In Kasun, the Seventh Circuit stated that "employment which merely lacks permanence is indefinite unless termination is foreseeable within a short period of time." . The Court further noted that employment may change from temporary to indefinite due to the passage of time. The burden of proving that the employment was temporary rests on the taxpayer. Rule 142(a). On the record before us, petitioners have failed to satisfy their burden of proving that Ralph's termination was foreseeable within a short period of time. Gregory Glynn, a labor relations representative for Bechtel, stated at trial that at the time Ralph was hired, an electrician with satisfactory ratings could anticipate continued employment for several years. Glynn's estimate appears credible given the fact that *61 the Palo Verde project was less than 50 percent complete as of August 31, 1980, construction at Palo Verde was anticipated to continue through 1986 and the peak demand for electricians at Aplo Verde did not occur until May, 1981. Moreover, Ralph's willingness to move his family to Arizona and to purchase a home there convinces us that he did not anticipate termination of his employment within a short period of time. Additionally, Ralph actually worked at the Palo Verde project from February 5, 1979, to January 11, 1984, except for brief work interruptions resulting from his participation in a strike by the local union, search for other employment and irregular attendance. Thus, not only was a long period of employment foreseeable at the time Ralph was hired, but the substantial actual duration of his employment supports a conclusion that his employment was "indeterminate in fact as it develop[ed]." ; The fact that Ralph experienced brief periods of unemployment during this period does not change our conclusion. We have previously held that brief interruptions *62 of work at a particular location will not transform indefinite work into temporary work. . Petitioners nevertheless argue that Ralph's lack of job security made his position temporary in nature. We disagree. Ralph described at trial his lack of job security as follows: When I first went out, I was new to this area and hadn't really travelled a lot. But I knew that I was only going to be here until the project was done or until my particular job was done. When I talked to the foreman, the general foreman and they went over the job rules with me and explained to me the need to watch every step, I realized that it was just a matter of time before you stepped the wrong way, break a rule of some sort and I, you know, wouldn't be working there anymore. Ralph's expectation that a work rule violation would eventually result in his termination, however, is not determinative of whether his employment was temporary. This fact only shows that the job was not permanent, but was indefinite. As stated above, employment which is not permanent is temporary only if it can be expected to end within a short period of time. *63 Petitioners, however, have failed to satisfy their burden of proving that during 1980 Ralph's termination at the Palo Verde project was foreseeable within a short period of time. Indeed, Bechtel did not terminate Ralph's position for a work rule violation until July 27, 1981, more than 29 Months after he first began work at the Palo Verde project. We hold that Ralph's employment at the Palo Verde project was indefinite and therefore his transportation expenses are not deductible. The fact that he anticipated termination at some indefinite time in the future does not alter our conclusion. Accordingly, respondent's determination is sustained. To reflect concessions, Decision will be entered under Rule 155.
Footnotes
1. In the notice of deficiency, respondent determined that petitioners were entitled to claim a travel expense deduction of $1,475 for expenses incurred in connection with Ralph's temporary employment in California. Respondent subsequently stipulated that petitioners are entitled to claim additional travel expenses of $764 incurred in connection with Ralph's temporary employment in California. The temporary employment was by employers other than Bechtel.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the years in question. All rule references are to the Tax Court Rules of Practice and Procedure.↩